IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | | |
|---|---|---|
| GLORIA WILLIAMS, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| CAROLYN W. COLVIN, Acting | * | No. 1:14CV00033-JJV |
| Commissioner, Social Security | * | |
| Administration. | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Gloria Williams, appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for supplemental security income ("SSI") benefits under Title XVI of the Act. For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.    BACKGROUND**

On September 25, 2011, Ms. Williams protectively filed for benefits due to arthritis, back problems, knee problems, hip pain, joint pain and swelling, hand and finger pain, and carpal tunnel syndrome. (Tr. 166) Ms. Williams's claims were denied initially and upon reconsideration. At Ms. Williams's request, an Administrative Law Judge ("ALJ") held a hearing on January 29, 2013, where Ms. Williams appeared with her lawyer. At the hearing, the ALJ heard testimony from Ms. Williams and a vocational expert ("VE"). (Tr. 25-59)

The ALJ issued a decision on Mach 15, 2013, finding that Ms. Williams was not disabled.

(Tr. 11-20)  The Appeals Council denied Ms. Williams's request for review, making the ALJ's decision the Commissioner's final decision.  (Tr. 1-3)

Ms. Williams, who was forty-two years old at the time of the hearing, has an eighth grade education and past relevant work as cook and cook helper.  (Tr. 29, 34)

## II.    DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ found that Ms. Williams had not engaged in substantial gainful activity since September 14, 2011, and she had the following severe impairments: degenerative disc disease of the thoracic and lumbar spine, fibromyalgia, and obesity.  (Tr. 13)  However, the ALJ found that Ms. Williams did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  (Tr. 14)

According to the ALJ, Ms. Williams has the residual functional capacity ("RFC") to perform light work, except that she can only occasionally climb, stoop, kneel, crouch, and crawl. Her standing and walking are limited to two to four hours, and no more than a half hour at a time, and she needs a sit/stand option.  She can perform an unskilled or low semi-skilled job and can understand, follow, and remember concrete instructions.  (Tr. 15)  The VE testified that jobs available with these limitations were assembly II, photocopy machine operator, document preparer, and surveillance monitor (which was in response to a sedentary RFC).  (Tr. 56-57)  Accordingly, the ALJ determined

---

[1]The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

[2]420 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

that Ms. Williams could perform a significant number of jobs existing in the national economy, and found that she was not disabled.

## III. ANALYSIS

### A. Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision.[3] Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."[4]

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion."[5]

### B. Ms. Williams's Argument for Reversal

Ms. Williams asserts that the Commissioner's decision should be reversed because it is not supported by substantial evidence. Specifically, she contends that the ALJ (1) improperly discredited the fibromyalgia diagnosis; (2) failed to consider Listing 1.02; and (3) should have ordered an independent medical examination (IME). (Doc. No. 10)

#### 1. Fibromyalgia

Ms. Williams argues that the ALJ improperly "doubted [the] diagnosis" of fibromyalgia. (*Id.*) The ALJ recognized that in October 2011, a treating physician determined that "clinically, she

---

[3] *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).

[4] *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

[5] *Id.* (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

had fibromyalgia syndrome." (Tr. 259) However, he discounted the severity of Ms. Williams's fibromylagia because she "failed to follow-up on recommendations made by the treating doctor" when she never returned for a follow-up appointment.[6] (Tr. 17) Additionally, the ALJ recognized that between October 2011 and February 2012, Ms. Williams sought no treatment for her symptoms, which "suggests her symptoms may not be as severe as alleged."[7] (Tr. 17) He also properly noted that her treatment was "essentially routine and/or conservative in nature."[8]

The ALJ also recognized that, despite her doctor's recommendations, Ms. Williams did not see a specialist. Though Ms. Williams testified that she has not sought follow-up treatment because she has no insurance, notes from January and October 2011 indicate that she smokes a half pack a day. (Tr. 41, 245, 258) Smoking is an expensive, ongoing habit that can be considered when weighing Ms. Williams's credibility about the inability to afford treatment.[9]

    2.    Listing 1.02

Ms. Williams argues that the ALJ failed to consider Listing 1.02. (Doc. No. 10). Listing 1.02(A) is for "Major dysfunction of a joint(s) (due to any cause)" and reads:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings

---

[6] *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

[7] *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (An ALJ may weigh the credibility of a claimant's subjective complaints of pain by considering multiple factors, including whether or not the claimant seeks regular medical treatment.).

[8] *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (finding that an ALJ may rely on the fact that a claimant has undergone only conservative treatment when evaluating the severity of the impairments).

[9] *Mouser v. Astrue*, 5454 F.3d 634, 638 (8th Cir. 2008) (holding that "there is no dispute that smoking has a direct impact on [claimant's] pulmonary impairments. Thus, the ALJ appropriately considered [his] failure to stop smoking in making his credibility determination.").

on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or . . . .[10]

To meet or equal a listing, Ms. Williams must prove that she met all of the specific medical criteria.[11] It appears that Ms. Williams is alleging her hallux valgus would meet the listing. While it is true that the ALJ did not address Listing 1.02, there was no need to discuss it. Ms. Williams's impairments clearly did not meet the listing. Importantly, Ms. Williams has had surgery to correct her hallux valgus, and records repeatedly noted that she had no limp and that her gait was coordinated and smooth. (Tr. 244, 259) Additionally, the ALJ noted that there is little in the records regarding Ms. William's foot and she has not seen anyone for her feet in over two years. (Tr. 42) And since Ms. Williams could ambulate effectively, she did not meet the listing.

    3.    IME

Ms. Williams asserts the ALJ should have ordered an independent medical examination (IME) because he discredited her complaints and there were limited medical records supporting her claims. (Doc. No. 10) However, as mentioned above, the ALJ had legitimate reasons to discredit the alleged severity of Ms. Williams's impairments. Again, an absence of treatment records is a factor that can be considered by the ALJ.[12] Additionally, "[t]he regulations . . . do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment."[13] Ms. Williams argues the ALJ should have looked into her hallux valgus more, but she did not even allege

---

[10] 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.02.

[11] *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995).

[12] *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[13] *Matthews v. Bowen*, 879 F.2d 422, 425 (8th Cir. 1989).

this was an impairment when she applied for benefits.[14]

Ms. Williams's position that the ALJ should have ordered an IME is not the law. Rather, the burden was on Ms. Williams.[15] If counsel was convinced that this was an issue that needed to be explored more, he should have brought it up at the hearing. Though an ALJ has the duty to develop the record, even when a claimant is represented by counsel, counsel is obliged to do more than sit by idly. Nevertheless, since there was sufficient evidence to support the ALJ's finding that Ms. Williams was not disabled, he did not err by failing to order an IME.[16]

Finally, Ms. Williams states there is a "doctor's note in the file dated February 2, 2012, that suggests Plaintiff cannot work." (Pl.'s Br. at 15.) The note says Ms. Williams ". . . needs [] not to work for a while [due to] cont[inued] back pain any activity causes back to hurt." (Tr. 289) However, the note, taken in context, appears to actually be capturing Ms. Williams's complaints, rather than medical analysis by her doctor. Therefore, this argument is without merit.

**IV.   CONCLUSION**

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision.

---

[14]*Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011) (Among other things, ALJ may consider the fact that a claimant did not allege an impairment in his complaint when discounting claimant's allegations).

[15]*Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir.2012) (burden of persuasion to demonstrate RFC and prove disability remains on claimant).

[16]*Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (explaining that the ALJ is required to order medical examinations only if the medical records before him do not provide sufficient evidence to determine whether the claimant is disabled).

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's Complaint with prejudice.

IT IS SO ORDERED this 18th day of November, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE